IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MICHAEL PAUL ANDES,

                                        Civil No. 10-142-MO

        Petitioner,

    v.

MARK NOOTH,

                                        OPINION AND ORDER

        Respondent.

    Kristina Hellman, Assistant Federal Public Defender
    101 S.W. Main Street, Suite 1700
    Portland, Oregon 97204

        Attorney for Petitioner

    John R. Kroger, Attorney General
    Andrew Hallman, Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, Oregon 97310

        Attorneys for Respondent


  1 - OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his underlying state conviction for Murder.  For the reasons that follow, the Petition for Writ of Habeas Corpus [2] is denied.

<u>BACKGROUND</u>

In February 2000, Angela Cook broke off her relationship with petitioner.  Immediately thereafter, Cook's 17-year-old daughter, Krystle, went missing.  Petitioner was the last person seen with Krystle, and he informed the police that he had last seen her when he dropped her off at her boyfriend's apartment in Longview, Washington.

When police attempted to follow up with petitioner on June 27, 2000, he informed them that he was going to hire an attorney to bring a civil suit against Angela Cook for defamation.  Trial Transcript, p. 223.  In September 2000, the police received a letter from attorney John McMullen informing them that petitioner had retained him as counsel, and any questions pertaining to the investigation should be directed to McMullen.  *Id* at 225, 227.

Krystle remained missing for more than a year, but in February 2001, petitioner's father, George, told the police that petitioner had killed Krystle by bludgeoning her to death with a baseball bat, and George had helped petitioner bury the body.  George assisted the police in their search for Krystle's body, taking them to a

remote location in Columbia County where Krystle's remains were discovered on February 9, 2001.

On February 10, 2001, petitioner was arrested and taken to the police station where he was interviewed at approximately 12:30 a.m. by Detectives Eric Altman and Jerry Simmons, both of whom identified themselves to petitioner as police officers. *Id* at 16-18, 142. The detectives explained to petitioner that he was under arrest for Krystle's murder, and petitioner told the detectives that he wished to speak with his girlfriend, and then to his attorney. *Id* at 19, 21, 143. Detective Altman told petitioner that it was "abundantly clear" that he had invoked his right to counsel, and the detectives discontinued their interview. *Id* at 20-21, 145. Detective Simmons advised petitioner that he would be transported to the Columbia County Jail, and he could make his phone call from that location. *Id* at 21, 145.

At this point, petitioner told the detectives that he was concerned about his girlfriend, and if they would allow him to call her, he would speak with them about their investigation. *Id* at 22-23, 146-47. As a result, the detectives allowed petitioner to call his girlfriend. After the phone call had concluded at 12:39 a.m., Detective Simmons asked petitioner whether he would still be willing to speak about the investigation, and petitioner agreed to do so. *Id* at 27, 149. Detective Altman re-administered petitioner's *Miranda* rights from a form which he placed in front of

3 - OPINION AND ORDER

petitioner, and petitioner agreed to waive those rights. *Id* at 31-32, 151-152.

After petitioner waived his *Miranda* rights, he proceeded to talk with the detectives about the case, but did not confess. Consistent with what he had previously related to the authorities, petitioner indicated that he last saw Krystle when he dropped her off at her boyfriend's apartment complex. *Id* at 42-44, 48, 156, 159. He claimed that when he returned 30 minutes later to pick her up, Krystle's boyfriend claimed she had never arrived at his apartment. *Id* at 52, 162-63.

At 1:15 a.m., petitioner asked for permission to call his uncle, and claimed he would not say any more until he spoke with him. *Id* at 54-55, 165, 168. Police allowed petitioner to make this call, and petitioner told his uncle to call his grandfather as well as his attorney, John McMullen. *Id* at 58, 168. After petitioner completed his call, he continued speaking with the detectives.

On February 21, 2001, petitioner was charged with one count of murder. Respondent's Exhibit 103, p. 1. Prior to trial, petitioner moved to suppress all of his statements to the detectives. The trial court concluded that petitioner had initially invoked his right to remain silent, at which point the detectives ended the interview. Respondent's Exhibit 104, at SER 10. The court also found that when Detective Simmons told

4 - OPINION AND ORDER

petitioner he would be transferred to the Columbia County Jail, he was not threatening him, but instead advising him of the next step in the process. *Id.* The court determined that petitioner's offer to speak with the detectives about their investigation if they would allow him to call his girlfriend was an initiation for further communication with the detectives, thus his statements after that point were admissible. *Id.* The court did, however, suppress all statements petitioner made after he had asked his uncle to call his attorney for him, reasoning that while this was not an explicit request for counsel, the detectives were obliged to inquire further as to whether petitioner was seeking to invoke his right to remain silent. *Id.*

At trial, petitioner changed his story and admitted killing Krystle, but claimed he had done so only after she had attacked him. The jury found petitioner guilty of Murder, and the trial court sentenced him to life imprisonment with a mandatory minimum sentence of 300 months. Respondent's Exhibit 101.

Petitioner took a direct appeal, but the Oregon Court of Appeals affirmed the trial court without issuing a written opinion, and the Oregon Supreme Court denied review. *State v. Andes*, 198 Or. App. 534, *rev. denied* 339 Or. 66 (2005).

Petitioner next filed for post-conviction relief ("PCR") in Malheur County where the PCR trial court denied relief. Respondent's Exhibit 158. The Oregon Court of Appeals affirmed the

lower court without issuing a written opinion, and the Oregon Supreme Court denied review. *Andes v. Nooth*, 229 Or. App. 740, *rev. denied* 347 Or. 258 (2009).

Petitioner filed this 28 U.S.C. § 2254 habeas corpus action on February 8, 2010 raising three grounds for relief:

1. All of petitioner's statements made after his invocation of counsel were obtained in violation of the Fifth and Fourteenth Amendments and therefore should have been suppressed;

2. Trial counsel rendered ineffective assistance by failing to object or move for a mistrial after at least one juror saw petitioner in shackles; and

3. The statute under which petitioner was sentenced, ORS 137.700, was enacted in violation of the U.S. Constitution.

Respondent asks the court to deny relief on the Petition because petitioner's claims lack merit, and the state court decisions denying relief on those claims are entitled to deference pursuant to 28 U.S.C. § 2254.

## DISCUSSION

### I.   Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

7 - OPINION AND ORDER

In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision.   *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## II.  Unargued Claims

Although respondent filed a Response in which he addressed the merits of petitioner's Ground Three claim, petitioner has neither refuted these arguments nor provided the court with any kind of briefing to support this claim.   The court has nevertheless reviewed petitioner's Ground Three claim on the existing record and determined that it does not entitle him to relief.   *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."); *see also Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims).

## III. Ground One: Decision to Admit Statements to Detectives

According to petitioner, the trial court should have suppressed not just those statements he made to detectives following his phone call to his uncle, but all of the statements he made during his post-arrest interrogation on the basis that he had invoked his right to counsel and did not voluntarily reinitiate the conversation.   He argues that his statements were unlawfully admitted at trial because they were the result of coercive police

8 – OPINION AND ORDER

pressure insofar as the interviewing detectives: (1) threatened him with immediate placement in the Columbia County Jail when he invoked his right to counsel; and (2) improperly induced his cooperation through a promise to allow him to speak with his girlfriend.

A suspect subject to custodial interrogation has a Fifth Amendment right to consult with an attorney, and the police must explain this right prior to questioning.  *Miranda v. Arizona*, 384 U.S. 436, 469-473 (1966).  "When an accused invokes his right to have counsel present during custodial interrogation, he may not be subjected to further questioning by the authorities until a lawyer has been made available or the suspect himself reinitiates conversation."  *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003) (citing *Edwards v. Arizona*, 451 U.S. 477, 484-485 (1981)). If the suspect chooses to reinitiate the conversation, he must do so in a manner that is knowing, intelligent, and voluntary. *Miranda*, 348 U.S. at 476-79; *Edwards*, 451 U.S. at 482.

In this case, petitioner clearly invoked his right to counsel at the beginning of his interview, and the detectives appropriately honored this request.  Although petitioner contends that the detectives threatened him with a transfer to a correctional facility due to his invocation of his right to counsel, the criminal trial court specifically found this not to be a threat. Instead, it reasoned that the statement about the transfer was

9 - OPINION AND ORDER

merely an advisory statement as to the next step in the process. Pursuant to 28 U.S.C. § 2254(e)(1), this factual finding is entitled to a presumption of correctness absent clear and convincing evidence to the contrary.

According to petitioner, the trial court's factual finding was unreasonable in light of the evidence because the record clearly shows that the interviewing detectives were willing to allow petitioner to make a call to his girlfriend, whereas their reaction to his request to speak with his attorney was to transfer him to the Columbia County Jail. These actions do not show that the detectives were attempting to penalize petitioner for invoking his right to counsel. His request to speak with his girlfriend, unlike a request for counsel, was not one that legally obligated the detectives to terminate the interview. The fact that the detectives were not going to turn a newly-arrested murder suspect free after invoking his right to counsel simply does not compel the conclusion that they penalized petitioner for invoking his right to counsel.

With respect to petitioner's allegation that the detectives' decision to allow petitioner to call his girlfriend constituted an improper promise designed to induce petitioner's cooperation, it is clear that petitioner voluntarily reinitiated his interview in this respect when he offered to continue the interview if the detectives would allow him to make the phone call. Even after petitioner made

10 - OPINION AND ORDER

his call, the detectives asked petitioner if he would still be willing to speak with them.  When he replied in the affirmative, the detectives re-administered the *Miranda* warning, and petitioner expressly waived his right to counsel and voluntarily spoke with the detectives.

Because petitioner knowingly, voluntarily, and intelligently waived his right to counsel and reinitiated the dialogue with Detectives Altman and Simmons, the trial court's decision to admit the resulting statements is neither contrary to, nor an unreasonable application of clearly established federal law.

## IV.   Ground Two: Ineffective Assistance of Counsel

Petitioner alleges that he was the victim of ineffective assistance of counsel when his trial attorneys failed to move for a mistrial after at least one juror observed him in shackles.  He asserts that counsel did not conduct any voir dire to determine the impact upon the jurors, and no curative steps were taken because counsel simply did not address the issue at all.  The PCR trial court denied relief on this claim, but did so without explanation. As a result, the court conducts an independent review of the record with respect to this claim.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test the Supreme Court has established to determine whether petitioner received ineffective assistance of counsel.

11 - OPINION AND ORDER

*Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009).   First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness.   *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).   Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance."   *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense.   The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial.   *Id* at 696.   When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review."   *Mirzayance*, 129 S.Ct. at 1420.

As an initial matter, petitioner, who bears the burden of proving his claims in this proceeding, has not established that any juror actually saw him in restraints.   Petitioner testified during his PCR proceedings that two jurors saw him in shackles outside of the courtroom.   Respondent's Exhibit 156, pp. 56-57.   He further stated that his attorneys pulled him back, rushed the jurors away,

and discussed this incident with him and presented it to the judge. *Id.* However, none of this testimony independently corroborated at his PCR trial. Indeed, only one of his defense attorneys addressed this issue in an affidavit for the PCR proceedings, and that attorney did not have any recollection of such an event transpiring. Respondent's Exhibit 119, p. 3.

Even if petitioner's uncorroborated PCR testimony was sufficient to demonstrate that one or two jurors saw him shackled outside of the courtroom, this would be insufficient to prove his claim of ineffective assistance of counsel. The Ninth Circuit has repeatedly determined that a jury's brief glimpse of a shackled criminal defendant outside of the courtroom is not prejudicial. *Williams v. Woodford*, 384 F.3d 567, 593 (9th Cir. 2004); *Ghent v. Woodford*, 279 F.3d 1121, 1133 (9th Cir. 2002); *United States v. Olano*, 62 F.3d 1180, 1190 (9th Cir. 1995); *Castillo v. Stainer*, 983 F.2d 145, 148 (9th Cir. 1992); *United States v. Halliburton*, 870 F.2d 557, 560-562 (9th Cir. 1989). As there is no showing in this case that the incident petitioner describes was uniquely prejudicial to him, he cannot prevail upon his claim of ineffective assistance of counsel. Accordingly, upon an independent review of the record, the PCR trial court's decision denying relief on petitioner's Ground Two claims is neither contrary to, nor an unreasonable application of clearly established federal law.

///

13 - OPINION AND ORDER

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus [2] is DENIED.  The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this ___16___ day of June, 2011.


                          /s/Michael W. Mosman
                          Michael W. Mosman
                          United States District Judge

14 - OPINION AND ORDER